**In re GRAND JURY MATTER.**

**Appeal of Nicholas CATANIA.**

No. 82–1035.

United States Court of Appeals,
Third Circuit.

Argued May 14, 1982.
Decided June 2, 1982.

Richard A. Sprague, Bruce L. Thall (argued), Joseph F. Lawless, Jr., Sprague & Rubenstone, Philadelphia, Pa., for appellant.

Peter F. Vaira, Jr., U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief of Appeals, James J. Rohn (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS and HUNTER, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal from a district court order denying a Petition for Vacation of a Rule 6(e) Order permitting the disclosure of grand jury materials to a state district attorney. We affirm in part and reverse in part.

On December 2, 1981 the United States Attorney's Office for the Eastern District of Pennsylvania (U. S. Attorney) and the Federal Bureau of Investigation (FBI) concluded an investigation into possible voter fraud in the 1981 primary and general elections for Controller of Delaware County, Pennsylvania. Appellant, Nicholas Catania, one of the subjects of that investigation, was suspected of conspiracy, RICO and mail fraud offenses. 18 U.S.C. §§ 371, 1341 & 1961–68. No federal prosecutions resulted from the federal inquiry. On December 3, 1981, at the request of the federal grand jury sitting in connection with the investigation, the government moved *ex parte* for an order pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure authorizing the disclosure to the Delaware County District Attorney's Office (District Attorney) of matters before the grand jury. The District Attorney had been interested in possible violations of Pennsylvania criminal statutes arising from the events investigated by the U. S. Attorney, but had suspended his investigation pending completion of the federal one. The district court issued an *ex parte* order granting the U. S. Attorney leave to disclose grand jury information. Soon thereafter, Catania filed a Petition to Stay and Vacate the Rule 6(e) Order.

On December 8, 1981 the U. S. Attorney informed the court that it did not oppose the Motion to Stay and that it would retain the materials covered by the earlier order until disposition of Catania's petition. The court was also advised that materials developed during the course of the Government's investigation, other than matters occurring before the grand jury, had been disclosed to the District Attorney on December 7, 1981. The court held an *ex parte in camera* hearing in which the Government presented the grand jury witness transcripts, the materials already disclosed, and the testimony of FBI agents. Catania's counsel was not permitted *in camera*.

The district court, on January 20, 1982 denied Catania's petition to vacate. The court held that the materials turned over on December 7, 1981 were not matters occurring before the grand jury and hence were properly disclosed.[1] The court also allowed

---

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. The court decided in the alternative that the District Attorney had established a "particularized need" for these materials.

the District Attorney to obtain transcripts of grand jury witness testimony pursuant to Rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure because the state investigation was preliminary to a judicial proceeding and because the District Attorney had established a "particularized need" for those transcripts. The witness transcripts were provided to the District Attorney on January 25, 1982. Catania has appealed to this court. We affirm the district court's order as it pertains to the December 7, 1981 disclosure, but reverse as to the disclosure of grand jury transcripts.

▮ It is settled federal policy that the grand jury system requires secrecy of grand jury proceedings. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979); *In re Grand Jury Investigation*, 610 F.2d 202, 213 (5th Cir. 1980). Rule 6(e)[2] of the Federal Rules of Criminal Procedure is intended to preserve this norm of secrecy by preventing the disclosure of matters occurring before a grand jury. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398–99, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959). The policy of secrecy is "designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). Two consequences follow. On the one hand, Rule 6(e) applies not

only to information drawn from transcripts of grand jury proceedings, but also to anything which may reveal what occurred before the grand jury. *See, e.g., In re Grand Jury Investigations*, 610 F.2d 202, 216–17 (5th Cir. 1980). Both the direct and indirect disclosure of information are proscribed. On the other hand, grand jury secrecy does not "foreclose from all future revelations to proper authorities the same information or documents which were presented to the grand jury." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960). *See also, SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Secrecy is not absolute, and Rule 6(e) has built-in exceptions, one of which, Rule 6(e)(3)(C)(i), lifts the veil of secrecy where disclosure of grand jury transcripts and evidence is "directed by a court preliminary to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i); *see Douglas Oil Co., supra*, 441 U.S. at 220–21, 99 S.Ct. at 1673–74; *see also, In re Grand Jury Proceedings*, 654 F.2d 268, 271–75 (3d Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

▮ In balancing the secrecy requirement with the need for grand jury transcripts, the Supreme Court has stated:

Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater

---

**2.** Rule 6(e) of the Federal Rules of Criminal Procedure in relevant parts states:

 (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

 (3) Exceptions.

 * * * * * *

 (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

 (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

 (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

 If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time and under such conditions as the court may direct.

than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Douglas Oil Co., supra*, 441 U.S. at 222, 99 S.Ct. at 1674. The seeking party must set forth a "particularized" need for the desired disclosure.[3] *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958). Once a party makes the required showing of need, the district court must weigh the competing interests and order so much disclosure as needed for the ends of justice. In undertaking such a determination, the district court "necessarily is infused with substantial discretion." *Douglas Oil Co.*, 441 U.S. at 223, 99 S.Ct. at 1675; *see Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959).

■ The information transmitted to the District Attorney on December 7, 1981 consisted of materials obtained in the course of the FBI's investigation of possible unlawful activity, including tape recordings and transcripts of consensually monitored conversations, FBI 302's, documents obtained without grand jury subpoena, and a prosecution memorandum summarizing the information compiled by the FBI investigation.[4] The district court found, after hearing the testimony of FBI agents, that these materials were the product of an FBI investigation, were not generated by the grand jury, and were not requested or subpoenaed by the grand jury. The court also found that the District Attorney did not know whether any

or all of these materials were ever before the grand jury. It held, therefore, that this was not information "occurring before a grand jury" and hence was outside the disclosure ban of Rule 6(e). We agree. "[T]he disclosure of information obtained from a source independent of the grand jury proceeding, such as a prior government investigation, does not violate Rule 6(e)." *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980). The information developed by the FBI, although perhaps developed with an eye toward ultimate use in a grand jury proceeding, exists apart from and was developed independently of grand jury processes. *See, e.g., In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981) (business records created for purposes independent of grand jury investigation and having legitimate use unrelated to the substance of grand jury proceedings); *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960). What the District Attorney received on December 7, 1981 are the fruits of a federal police investigation, not a federal grand jury investigation. Moreover, since the District Attorney does not know what part of the material he received was presented to the grand jury, this is not a case where information developed independently of but presented to a grand jury could disclose what transpired before the grand jury.[5] Thus, the district court did not err in holding that the material dis-

---

3. Some courts, following *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), have required that the "particularized" need also be "compelling." *See, e.g., In re Disclosure of Evidence*, 650 F.2d 599, 601 (5th Cir. 1981). The Court has specifically refrained from dealing with the continuing validity of the "compelling need" requirement of *Procter & Gamble. Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 224 n.14, 99 S.Ct. 1667, 1675 n.14, 60 L.Ed.2d 156 (1979). We do not deal with this question since our decision would be unchanged even if a weaker standard of need were imposed.

4. The material also includes draft indictments prepared by the U. S. Attorney. Although these were prepared after the grand jury delib-

erations began and might be based on knowledge of the grand jury proceeding, they do not reveal any grand jury information on which they might be based. The draft indictments therefore fall outside Rule 6(e).

5. We do not imply that matters occurring before a grand jury fall outside the ambit of Rule 6(e) whenever the inquiring party seeks the information for reasons other than its role in the grand jury investigation. *See, e.g., Fund for Constitutional Government v. NARS*, 656 F.2d 856, 870 (D.C.Cir.1981). The motive of the seeking party is only relevant when the information sought is developed independently of the grand jury proceeding but is also presented to the grand jury.

closed on December 7, 1981 falls outside Rule 6(e).[6]

■ The District Attorney also requested transcripts of grand jury witness testimony. The court found that the disclosure of information would be preliminary to a judicial proceeding and that the state prosecution would be prejudiced if disclosure were not allowed, because the District Attorney, in cooperation with federal officials, had suspended his investigation pending the end of the FBI investigation in exchange for an FBI promise to pass along any evidence of state law violations. The court also found that at least one witness refused to speak to the District Attorney on the basis of his earlier federal grand jury testimony; that the transcripts would have impeachment value; and that the District Attorney would be unable to duplicate the evidence contained in the transcripts from other sources due to the delay incurred by suspension of the state investigation while the federal investigation went forward. Balancing the District Attorney's need for the grand jury transcripts against the policy of grand jury secrecy, the court authorized disclosure pursuant to Rule 6(e)(3)(C)(i). On this record we conclude that this authorization was an abuse of discretion.

The grand jury transcripts record material occurring before a grand jury which may not be disclosed "except as otherwise provided in these rules." Rule 6(e)(2). Rule 6(e)(3)(C)(i), on which the District Attorney relies, provides that a "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may ... be made ... when so directed by a court preliminary to or in connection with a judicial proceeding." Obviously this is the relevant exemption. The planned state investigation based on the grand jury transcripts may result in a state criminal prosecution in a state court. The disclosure of information is therefore "preliminary to ... a judicial proceeding." Catania argues that since the state investigation may not result in criminal prosecution, the likelihood of future judicial proceedings is "too embryonic, speculative, and uncertain to firmly say that it is 'preliminary to' a judicial proceeding." *In re The Special February 1975 Grand Jury*, 662 F.2d 1232, 1238–39 (7th Cir. 1981) (*Baggot*). In *Baggot*, the Internal Revenue Service sought grand jury transcripts as part of an investigation of Baggot's possible additional tax liabilities. The court noted that the only immediate result of the investigation would be the assessment of a tax deficiency in the future. Judicial proceedings would be instituted, at the behest of the taxpayer, only after an assessment of a deficiency. Thus any possible judicial proceeding at the time of disclosure was not only contingent but also many steps removed. In the case before us, the state investigation immediately precedes the possible criminal prosecution. The prosecutorial discretion to refrain ultimately from making a charge is not the type of contingency which renders the likelihood of future judicial proceedings too embryonic to provide the predicate for a disclosure under Rule 6(e)(3)(C)(i). *See generally In re Disclosure of Testimony Before the Grand Jury*, 580 F.2d 281 (8th Cir. 1978) (grand jury transcripts turned over to bar committee in charge of disciplining attorneys and disqualifying judges even though ultimate court proceedings not inevitable since accused attorney and judge may be exonerated); *In re Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973) (disclosure of grand jury testimony to police board of inquiry albeit judicial proceedings may be obviated if inquiry board dismissed charges); *Doe v. Rosenberry*, 255 F.2d 118 (2d Cir. 1958) (grand jury transcript turned over to grievance committee of New York City Bar Association despite uncertainty as to likelihood of ultimate judicial proceeding). *But cf. In re J. Ray McDermott & Co.*, 622 F.2d 166, 171 (5th Cir. 1980) (existence of yet unused statutory authority of Federal Energy Regulatory Commission (FERC) to bring injunctive action not sufficient to make investigation by FERC "pre-

---

**6.** We need not reach the alternative holding that the District Attorney had made a showing of particularized need for the material disclosed on February 7, 1981.

liminary to" judicial proceedings for purposes of Rule 6(e)).

But while the Rule 6(e)(3)(C)(i) exception to Rule 6(e) secrecy is applicable, the burden is on the District Attorney to show particularized need for the grand jury transcripts. We agree with the district court that grand jury materials may be useful for purposes of impeachment at a possible future state trial, but we think that the court erred in accepting as a bona fide need the District Attorney's difficulties, brought about by the delay in state investigations, in independently securing witness testimony and in conducting an investigation. The possible prejudice to the state investigation caused by the District Attorney suspending his inquiry and relying on an agreement whereby the FBI would turn over evidence to the state is not the type of particularized need required to supplant the federal secrecy rule. The District Attorney delayed his investigation at his own risk and the reliance on the agreement with the FBI was misplaced, at least to the extent that he expected to obtain more than the materials turned over on December 7, 1981. An agreement between the state District Attorney and federal officials cannot be the basis for breaching the secrecy mandate of Rule 6(e). Moreover, any difficulty which the state investigation encounters due to witness recalcitrance to testify can be cured, absent witness unavailability, by invoking state compulsive process, rather than by intruding on federal grand jury materials. Access to grand jury information cannot be had merely for the convenience of the state investigation. *See, e.g., In re Disclosure of Evidence,* 650 F.2d 599 (5th Cir. 1981).

Although the use of grand jury transcripts for impeachment satisfies the particularized need requirement, the district court exceeded the bounds of proper discretion by allowing full disclosure of grand jury transcripts. The balance struck between secrecy and the need for grand jury transcripts must result in the disclosure of information limited to the claimed need. Here the court allowed disclosure of grand jury transcripts even though the need for

them will arise only if and when the state investigation results in a state trial. Disclosure now is too early. Moreover, far too much information was provided. The District Attorney only needs those parts of the grand jury transcripts pertaining to the information generated by the state investigation and resulting in testimony. At the time of the district court order, it was not at all clear what the state investigation would yield. It could not be known what parts of the grand jury materials would be useful. Clearly, all the disclosed material may not be needed. We think that the balance in this case between secrecy and need impermissibly shifted toward excessive disclosure of grand jury transcripts.

 It was not an abuse of discretion to hold the inquiry on Catania's Motion to Vacate the Rule 6(e) Order *ex parte in camera.* The legislative history of Rule 6(e) indicates that "[i]t is contemplated that the judicial hearing in connection with an application for a court order by the government under [Rule 6(e)(3)(C)(i) ] should be *ex parte* so as to preserve, to the maximum extent possible, grand jury secrecy." S.Rep.No.93–354, 95th Cong., 1st Sess. 8, *reprinted in* [1977] U.S.Code Cong. & Ad.News 527, 532 (footnotes omitted). Nor do we find any sixth amendment or due process violations in the nature of the hearing provided Catania. He is not involved in a criminal prosecution by the federal government, so the mandate of the sixth amendment requiring the effective assistance of counsel is not applicable to a hearing in a civil proceeding to determine disclosure of grand jury materials.

 Catania received all the hearing to which he was entitled under the due process clause of the fifth amendment. The district court's decision to exclude appellant and his counsel from the *in camera* examination of the grand jury transcripts and the FBI investigation materials had no due process defect given the secrecy attached to such information, the wide discretion allowed the district court, and the minimal impact which Catania, without access to the relevant information, could have had on the district court's deliberations.

The judgment appealed from will be affirmed insofar as it approves release of the materials delivered to the District Attorney on December 7, 1981, and reversed insofar as it approves release of grand jury transcripts. As to the grand jury transcripts, the case will be remanded for further proceedings consistent with this opinion, including steps appropriate to prevent further dissemination of the contents of grand jury transcripts in violation of Rule 6(e).